## MORSE *vs.* PIKE & a.

15  529
69  137

Property was described in a mortgage as " all the pine timber in Whitman's mill yard and pond, and all the manufactured lumber in and about said mill." There was a lane leading from the mill yard to the main road, and some of the lumber lay on the west side of the road and nearly opposite the west end of the lane. Whether that lumber were included by the words, " about said mill," *quære ?*

One Morse, owning certain lumber in and about a mill, and having mortgaged it to the plaintiff, and one Braynard having the possession and charge of it, the plaintiff went to the mill to take possession of it, and desired Braynard to take possession of it for him, and to take charge of it as he had done before, to which Braynard made no objection. A son of the mortgager, as his agent, accompanied the plaintiff for the purpose of giving him possession.—*Held*, that this was a sufficient possession in the plaintiff to enable him to maintain trespass against the defendants who showed no title.

TRESPASS, for taking and carrying away boards and shingles of the plaintiff.

The taking was on the 29th or 30th of June, 1843.

It appeared that on the 26th of June, 1843, Timothy Morse, of Newbury, Vt., was in the possession of a certain mill, called Whitman's mill, in Haverhill, in this county, together with a mill

yard adjoining, and lying about twenty or twenty-five rods easterly of the main river road leading through "Slab City." A lane led from the yard to the main road, in width such that two carts could not pass each other. Morse had then boards in the mill yard, and others, (together with some shingles,) lying on the west side of the main road, nearly opposite the westerly end of the lane but a very little farther north. He had also lumber at Dutton's landing, to which place he was in the habit of drawing lumber from the mill, and the route from the mill and yard to the landing was through the lane and on the road aforesaid, by the boards and shingles at the road. The defendant Pike had drawn lumber for Morse, and he, and all others who drew lumber, were in the habit of drawing it in bad travelling only part of the way, and leaving it by the way until good travelling, when they took it and drew it to the landing.

One Braynard had the general charge, care and superintendence of the mill, and of all the lumber belonging to Morse in the pond at the mill, and in the mill yard, and at Dutton's landing, and also at intermediate places between the yard and landing. On the 26th day of June, 1843, Morse conveyed to John C. Morse, the plaintiff, in mortgage, certain lumber described thus : "All the pine timber in Whitman's mill yard and pond ; all the manufactured lumber in and about said mill ; all my boards, shingles and planks lying at Dutton's landing, estimated to be about 200.000 feet."

On the 27th day of June, 1843, John C. Morse, the plaintiff, went to the mill where Braynard was, to take possession of all the lumber which had belonged to Timothy Morse then in the mill yard and pond, and at Dutton's landing, as well as of the boards and shingles at the side of the road ; and the plaintiff then told Braynard to take possession of all the lumber for him, and to take the same charge and care of it under him that he had taken under Timothy. The plaintiff took no other possession of the lumber at the road than what results from the facts above detailed, and from the farther fact that a son of Timothy Morse was then present at the mill, for the purpose of giving the plaintiff the possession of the lumber as agent of Timothy.

A verdict was taken for the plaintiff for the value of the lumber that was in the mill yard and at the road, and interest thereon from the taking. The jury found the value of the lumber taken at the yard to be $5.00, and of that taken by the road side to be $33.00, and interest on the whole to be $1.52.

The verdict was taken subject to the opinion of this court.

*Perley,* for the defendant. The lumber taken was twenty-five rods distant, and lay on the opposite side of the road. This cannot be said to have been in or about the mill yard. It should have been under the control of the owner of the yard. It was not at the mill, nor *in transitu.* It was merely refuse lumber, and should have been described more distinctly than it was in the mortgage. There was no possession independent of and beyond the mortgage. No possession was actually taken. It was not taken by the agent. Timothy Morse did not deliver possession of any thing but the mortgaged property.

*Hibbard,* for the plaintiff. The question we now make is as to the lumber along the road, and not in the yard. The plaintiff has possession, first, by his mortgage, which is sufficient to maintain trespass; and, secondly, he had a sufficient possession independent of his mortgage. The lumber was left at the place where lumber was usually left, and that made the place an appendage to the mill. The word " about," according to the lexicographers, means "relating to," " concerning." *See Worcester, Webster and Johnson.*

The possession, independent of the mortgage, was as follows: Timothy Morse owned all the lumber, and John C. Morse went to take possession of it. The son of Timothy went with John, in order to put him in possession of all of it. Braynard had possession of the whole, and John obtained possession of Braynard. It was not necessary for Braynard to go through the form of taking possession over again. This was sufficient evidence of possession, for slight evidence is enough to maintain trespass. 1 *Ch. Pl.* 169.

*Wilcox,* on the same side. The mortgage covers something

beyond what was in the yard and at the mill. That about which the controversy exists is what was at the side of the road and at the end of the lane. The lane would pass by a conveyance of the yard, and this is at the end of the lane. Lumber which has not passed out of the possession of the miller may be said to be in and about the yard. The defendants were wrong doers. They had no right to interfere with the possession of the plaintiff. The presumption is, that whatever was done was by assent of the owner. If so, it is immaterial whether the lumber was included in the mortgage or not.

GILCHRIST, J. This case may be stated very shortly. The mortgage included "all the pine timber in Whitman's mill yard and pond, and all the manufactured lumber in and about said mill." There was a lane leading from the mill yard to the main road, and there was some lumber lying on the west side of the main road, nearly opposite the west end of the lane.

There is no doubt that the mortgage covers all the lumber in the yard, and also all the lumber in the mill. But it may be doubtful whether the lumber *about* the mill includes the lumber at the end of the lane. That lumber was not even in the lane, but was opposite the end of it, and was in the main road, which is entirely independent of the mill and of the mill yard.

But this point it is unnecessary to determine, for the facts stated in the case show that the plaintiff had possession of all the lumber owned by Timothy Morse. Of this Braynard had charge, and the plaintiff desired him to keep possession of it for him, and to take the charge of it as he had before for Timothy Morse. To this it does not appear that Braynard made any objection. Moreover, a son of Timothy Morse, as his father's agent, accompanied the plaintiff for the purpose of giving him possession. Now, the plaintiff thus having the possession, and the defendants having shown no title, the plaintiff is entitled to

*Judgment on the verdict.*